JOHN S. LEONARDO
United States Attorney
District of Arizona
JONATHAN B. GRANOFF
Assistant U.S. Attorney
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7300
Email: jonathan.granoff@usdoj.gov
Attorneys for Plaintiff

FILED ___ LODGED
RECEIVED ___ COPY
MAY 2 2013
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY___ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR 11-794-TUC-RCC (CRP) |
|---|---|
| Plaintiff, | |
| vs. | **PLEA AGREEMENT** |
| Chad Ayers, | |
| Defendant. | |

Plaintiff, United States of America, and defendant, Chad Ayers, hereby agree to the following disposition of this matter:

**PLEA**

Defendant will plead guilty to Count 1 of the Indictment charging, Conspiracy to Commit Wire Fraud and Count 15, Conspiracy to Commit Transactional Money Laundering, both felony offenses.

**TERMS**

Defendant understands that the Court is required to consider the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") among other factors in determining defendant's sentence. Defendant understands, however, that the Sentencing Guidelines are only advisory.

1. **AGREEMENT REGARDING SENTENCING**

The parties have agreed to a sentencing range of 0 to 5 years in prison. The parties agree and the defendant understands that it shall be up to the district court's discretion to sentence the defendant with this range. The defendant further understands that if he is sentenced to any period of supervised release or probation, the length of the terms of either condition shall be determined by the district court.

The parties further agree that for the purposes of this plea agreement, the defendant shall be attributable for the losses associated with the following transactions in the indictment under the United States Sentencing Guidelines: 6840 N. Vista Del Pueblo (Transactions #9 and #10) and 5221 W. Rhyolite Loop (Transaction #13). The parties agree that the losses relating to these properties is between $1,000,000 and $2,500,000. The parties further agree that the sentence for each count to which the defendant has entered a plea will run concurrently. The government agrees that at the time of sentencing, if the court accepts this plea, the government will move to dismiss the remaining charges set forth in the indictment to which the defendant has not entered a plea of guilty.

2. **MAXIMUM PENALTIES**

A. Count 1: A violation of Title 18 United States Code, Section 1349 (Conspiracy to Commit Wire Fraud) is punishable by a maximum fine of $250,000, a maximum term of imprisonment of twenty (20) years, a term of supervised release of three (3) years, or all three combined. If probation is available, the maximum period of probation is five (5) years.

B. Count 15: A violation of Title 18 United States Code, Section 1956(h) (Conspiracy to Commit Transactional Money Laundering) is punishable by a maximum fine of $250,000, a maximum term of imprisonment of ten (10) years, a term of supervised release of three (3) years, or all three combined. If probation if available, the maximum period of probation is five (5) years.

C. According to the Sentencing Guidelines issued pursuant to the Sentencing Reform Act of 1984, the Court:

(1) shall order defendant, pursuant to Title 18, United States Code, Section 3663A, to make restitution to any victim of the offense (see Title 18, United States Code, Section 3663A) (Mandatory Restitution Provision);

(2) may order defendant to pay a fine, which may include the costs of probation, supervised release or incarceration, unless, pursuant to Title 18, United States Code, Section 3611, the defendant establishes the applicability of the exceptions found therein; and

(3) may order defendant, pursuant to Title 18, United States Code, Section 3583, to serve a term of supervised release when required by statute.

D. Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a special assessment on defendant of $100.00 per count. Defendant agrees that the special assessment shall be due at the time defendant enters the plea of guilty, but in no event shall it be paid later than the time of sentencing.

## 3. AGREEMENT TO DISMISS OR NOT PROSECUTE

a. This office will not prosecute the defendant for any offenses committed by the defendant that are known to the government at the time of defendant's plea of guilty.

b. This agreement does not, in any manner, restrict the actions of the United States in any other district nor bind any other United States Attorney's Office.

## 4. WAIVER OF DEFENSES AND APPEAL RIGHTS

a. The defendant waives any and all motions, defenses, probable cause determinations, and objections which the defendant could assert to the indictment or information or to the Court's entry of judgment against the defendant and imposition of sentence upon the defendant, providing the sentence is consistent with this agreement. The defendant further waives: (1) any right to appeal the Court's entry of judgment against defendant; (2) any right to appeal the imposition of sentence or any order of restitution that the court imposes upon defendant under Title 18, United States Code, Section 3742 (sentence appeals); and (3) any right to collaterally attack defendant's conviction and sentence under Title 28, United States Code, Section 2255, or

any other collateral attack. The defendant acknowledges that this waiver shall result in the dismissal of any appeal or collateral attack the defendant might file challenging his conviction, sentence, any order of restitution the court imposes or any other matter relating to this case.

b. The United States likewise will waive its right to appeal the sentence imposed by the court and the manner in which the court determines the defendant's sentence, as long as the sentence is consistent with the terms of this agreement.

5. **REINSTITUTION OF PROSECUTION**

If defendant's guilty plea is rejected, withdrawn, vacated, or reversed at any time, the United States will be free to prosecute the defendant for all charges of which it has knowledge, and any charges that have been dismissed because of this plea agreement will be automatically reinstated. In such event, defendant waives any objections, motions, or defenses based upon the Statute of Limitations, the Speedy Trial Act or constitutional restrictions in bringing of the later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding as permitted by Fed. R. Crim. P. 11(e)(6).

6. **PLEA ADDENDUM**

This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal. Accordingly, additional agreements, if any, may not be in the public record.

7. **AGREEMENT TO MAKE RESTITUTION**

Defendant agrees to a restitution judgment of $459,250 relating to the 5221 W. Rhyolite Loop property (transaction #13 in the indictment); and a $380,000 restitution judgment relating to the 6840 N. Vista Del Pueblo property (transactions #9 and #10 in the indictment). The restitution order shall be joint and several with any co-defendant/defendant's restitution order

issued in relation to the above-properties. The defendant further agrees that, pursuant to 18 U.S.C. §3613, all monetary penalties, including restitution imposed by the Court, will be due immediately and subject to immediate enforcement by the Government as provided for in Section 3613. If the Judgment in a Criminal Case imposes a schedule of payments, the defendant understands that the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the government to enforce the judgment. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The government agrees that there will be no post-judgment interest on the amount of restitution set by the court.

8. **ASSETS**

The defendant agrees to make a full accounting of all assets, including real and personal property in which he has any actual, beneficial, or joint ownership interest, wherever located, available to be applied toward restitution and to cooperate fully with the Government and the United States Probation Office to execute such documentation as may be necessary to secure such assets for application to restitution. The defendant further agrees that he will not sell, hide, waste, destroy, or otherwise devalue or transfer any such assets or property before sentencing, without the prior approval of the Government. The defendant understands and agrees that his failure to comply with this provision of the Plea Agreement will result in his receiving no credit for acceptance of responsibility. The defendant's cooperation obligations include fully and truthfully completing the Department of Justice's Financial Statement of Debtor form within ten (10) days of the change of plea hearing; submitting to a financial deposition or an interview or interviews (if necessary) regarding his past and present financial condition, as well as the financial condition of all members of his household (including but not limited to spouse and children), prior to sentencing; providing any documentation requested by the Government or the United States Probation Office regarding his financial condition as well as the financial condition of all household members (including but not limited to that of spouse and children); and fully

and truthfully answering all questions regarding his past and present financial condition in such interview(s). The defendant further agrees to permit the United States Probation Office to provide copies to the United States Attorney's Office for the District of Arizona any and all financial information provided by the defendant to the United States Probation Office.

9.   **DISCLOSURE OF INFORMATION TO U.S. PROBATION OFFICE**

A.   The defendant will cooperate fully with the United States Probation Office. Such cooperation will include truthful statements in response to any questions posed by the Probation Department including, but not limited to:

(1)   All criminal history information, i.e., all criminal convictions as defined under the Sentencing Guidelines.

(2)   All financial information, e.g., present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

(3)   All history of drug abuse which would warrant a treatment condition as part of sentencing.

(4)   All history of mental illness or conditions which would warrant a treatment condition as a part of sentencing.

**ELEMENTS AND FACTUAL BASIS**

A.   **Conspiracy to Commit Wire Fraud (Count 1)**

I, Chad Ayers, understand that the essential elements of Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code, Sections 1349 and 1343 are as follows:

(1)   Within the time frame set forth in the Indictment, in the District of Arizona, there was an agreement between two or more persons to commit one or more crimes of Wire Fraud as charged in the Indictment;

(2)   Defendant became a member of the conspiracy knowing of its object (Wire Fraud) and intending to help accomplish it.

**B.     Wire Fraud**

I, Chad Ayers, understand that the essential elements of Wire Fraud, in violation of Title 18, United States Code, Section 1343, are as follows:

(1) Within the time frame set forth in the Indictment, in the District of Arizona, defendant knowingly carried out a scheme or plan to obtain money or property by making false statements or promises;

(2) Defendant knew that the statements or promises were false;

(3) The promises or statements were material, that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

(4) Defendant acted with the intent to defraud; and

(5) Defendant used, or caused to be used, wire, radio or television communications in interstate or foreign commerce to carry out an essential part of the scheme.

**C.     Conspiracy to Commit Transactional Money Laundering (Count 15)**

I, Chad Ayers, understand that the essential elements of Conspiracy to Commit Transactional Money Laundering Greater than $10,000, in violation of Title 18, United States Code, Section 1956(h) are as follows:

(1) Within the time frame set forth in the Indictment, in the District of Arizona, there was an agreement between two or more persons to commit one or more of the crimes of Transactional Money Laundering as charged in the Indictment;

(2) Defendant became a member of the conspiracy knowing of at least one of its objects (Transactional Money Laundering) and intending to help accomplish it; and

**D.     Transactional Money Laundering Greater than $10,000**

(1) In the District of Arizona defendant knowingly engaged or attempted to engage in a monetary transaction;

(2) The defendant knew the transaction involved in the monetary transaction involved criminally derived property;

    (3)    The property had a value greater than $10,000;

    (4)    The property involved in the monetary transaction was derived from a specified unlawful activity (namely violations of Wire Fraud).

**FACTUAL BASIS**

From approximately June, 2004 through October, 2006, I, Chad Ayers, agreed with others to commit loan fraud relating to several real estate properties. I was involved in a "cash back" mortgage fraud scheme perpetrated by myself and others in the District of Arizona. The purpose of this conspiracy was to obtain mortgage financing from the lenders so that a portion of the loan proceeds could be shared amongst the members of this conspiracy. I knew that as part of this conspiracy, material false statements were submitted on behalf of the loan applicants or straw buyers to the lenders. These material false statements were submitted through the loan applications or other false documents in order to qualify the loan applicants for financing to purchase the properties.

I knew that the loan applications that were submitted contained at least one or more of the following material false statements: (1) false statement of intent to occupy the property as a primary residence; (2) inflated income or assets; or (3) false representations concerning the loan applicants' current resident address. As part of this conspiracy, I signed letters on behalf of straw buyers that contained material false statements including a false letter regarding the loan applicant's stated intent to occupy the property as a primary residence. In connection with the fraud scheme, wires, in interstate commerce, were used to transfer money from the lender to the title companies for the funding of the loans.

In many of the real estate transactions members of the conspiracy including myself conducted or knowingly caused to be conducted financial transactions in Arizona with proceeds that were derived from our scheme to defraud. These proceeds were disbursed by the title company after the lenders had funded the fraudulently obtained loans. I conducted or knowingly caused to be conducted some of these transactions with these funds knowing that the money we received represented the proceeds from our scheme to defraud. I agree that the government

could prove that these funds were derived from our scheme to defraud, specifically wire fraud or conspiracy to commit wire fraud. Many of these transactions conducted in this fashion involved proceeds of a value of greater than $10,000.

As a result of the scheme to defraud the properties eventually went into foreclosure resulting in significant losses to the lenders.

The above facts are a summary of my involvement in this matter for the purposes of this plea agreement only. This summary does not include each and every fact that I know about this case.

## DEFENDANT'S APPROVAL AND ACCEPTANCE

I have read each of the provisions of the entire plea agreement with the assistance of counsel and understand its provisions.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I will be giving up my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination -- all with the assistance of counsel -- and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence will be determined after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances or promises other than the promises contained in this agreement. I agree to the provisions of this agreement as a voluntary act on my part and I agree to be bound according to its provisions.

1     I fully understand that, if I am granted probation or placed on supervised release by the court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that, if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence may otherwise be altered.

    I agree that this written plea agreement contains all the terms and conditions of my plea and that promises made by anyone (including my attorney), and specifically any predictions as to the guideline range applicable, that are not contained within this written plea agreement are without force and effect and are null and void.

    I am very satisfied that my defense attorney has represented me in a competent manner.

    I am fully capable of understanding the terms and conditions of this plea agreement. I am not now on or under the influence of any drug, medication, liquor, or other intoxicant or depressant, which would impair my ability to fully understand the terms and conditions of this plea agreement.

5.2-13
Date

Chad Ayers
Defendant

## DEFENSE ATTORNEY'S APPROVAL

    I have discussed this case and the plea agreement with my client, in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory sentencing guideline with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or by any of its representatives which are

not contained in this written agreement. I concur in the entry of the plea as indicated above and on the terms and conditions set forth in this agreement as in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

5-2-13
Date

Richard Bock/Daniel Mestaz
Attorneys for Defendant

## UNITED STATES' APPROVAL

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth are appropriate and are in the best interests of justice.

JOHN S. LEONARDO
United States Attorney
District of Arizona

5/2/13
Date

for Jonathan B. Granoff
Assistant U.S. Attorney